No. 16,297.

ACKER *v.* JOHNS.

(216 P. [2d] 426)

Decided February 20, 1950.   Rehearing denied March 13, 1950.

Mr. SIDNEY S. JACOBS, Mr. WILLIAM H. BURNETT, Mr. BEN SLOSKY, for plaintiff in error.

Mr. MAX D. MELVILLE, Mr. EDWARD E. PRINGLE, Mr. MITCHEL B. JOHNS, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error, Acker, filed a petition in partition of three lots, with certain exceptions, in block twelve, Sumner's Addition to Denver, alleging that he and the

defendant Johns were tenants in common and that the defendant was wrongfully appropriating the most valuable part of the property to his own use by constructing buildings thereon without the permission of plaintiff and over his objections; that he had wrongfully excluded plaintiff from the occupancy of that portion of the property and that defendant had benefited from this use and was liable to plaintiff for his portion thereof. Plaintiff further alleged that unless defendant was enjoined from completing said building, equitable partition would be difficult, all to the damage of plaintiff. A temporary restraining order was issued, and defendant answered, denying the tenancy in common and alleging his sole ownership; admitting his use and occupation of the premises; and alleging that his use and occupancy was under his right as the sole owner.

As a counterclaim defendant alleged: That plaintiff and defendant entered into an agreement whereby defendant was to purchase a one-half interest in the Verdeckberg Iron Works from plaintiff for the sum of $3,500, the plaintiff having represented that he was the owner thereof and had the right to sell the one-half interest; that pursuant to said agreement, defendant paid plaintiff the sum of $3,500; that after receiving the $3,500, plaintiff consistently postponed the date on which the partnership would go into effect, desiring to defer it until after the end of the war; that on April 25, 1944, defendant, as the owner of the Johns Engineering Company, proposed to buy from the owner the property here in question, and learning of this impending transaction, plaintiff proposed to defendant that the property should be purchased for the use of the proposed partnership, and that the plaintiff would pay one-half of the purchase price; defendant, relying on plaintiff's suggestion, purchased the property, paid the entire purchase price and caused a deed to be made to the plaintiff and himself as tenants in common; that in

the fall of 1945, plaintiff informed defendant that the partnership could not be consummated for various reasons; that the entire matter had to be called off; and that he would repay defendant the $3,500 in installments; that defendant agreed to this proposal and the entire transaction was voided; that plaintiff had paid defendant $2,303.45 of the $3,500; that plaintiff's refusal to consummate the partnership and his agreement to repay the money paid to him by the defendant and defendant's acceptance thereof, and the proposed partnership, with all its incidents, became null and void; that defendant has requested plaintiff to convey his record interest in the property, which plaintiff has refused to do.

Plaintiff answered defendant's counterclaim, the answer in substance being a general denial of the allegations thereof with the exception of admission of the repayment of money to the defendant.

Trial on the merits was had to the court and judgment was entered in favor of defendant upon the findings of the trial court that plaintiff has no interest in the property; that defendant is the sole owner, and, further, that the partnership deal never was consummated.

For reversal, plaintiff urges the following points: (1) That the tenancy in common deed should not have been set aside except upon definite, clear and indubitable evidence. (2) That the court erred in finding that plaintiff had made no tender to defendant of one-half of the purchase price of the property involved. (3) That the court erred in trying the case in widely separated installments, in setting aside the deed in the absence of fraud or duress, and in failing to grant partition.

Summarized, the facts appear to be: That in September, 1943, plaintiff and defendant had an oral agreement whereby defendant was to pay $3,500 for a one-half interest in the Verdeckberg Iron Works; the full amount was paid by defendant, who received nothing

in exchange therefor at the time, and, as defendant testified, the partnership would not be consummated until after the war; it developed that at the time, plaintiff was not the sole owner of the iron works and had never owned more than two-fifths thereof. In April, 1944, defendant was seeking a building site for an engineering company which he was conducting and upon finding the property here in question, learned that it belonged to an estate then being administered in the county court; his offer finally being accepted, the administrator of the estate petitioned for an order to sell the property to the Johns Engineering Company, which was owned and operated by defendant; the order was entered, and the sale consummated. On August 10, 1944, upon the suggestion and request of plaintiff, a petition was filed in the county court to amend the order of sale by making plaintiff and defendant the grantees therein. It seems from the evidence that plaintiff made some proposal to pay one-half of the purchase price to defendant, which never was accepted; plaintiff deposited the money in his own name in defendant's bank, and plaintiff claims that this was a tender of his part of the purchase price. It is well established by the testimony that the proposed partnership never was consummated and was voided by mutual agreement in the fall of 1945, and the court so found.

It seems to be the contention of plaintiff that the intended partnership was only for the interest in, and for the operation of, the iron works, and that the real property here involved still remained the property of both plaintiff and defendant as tenants in common. The testimony of both plaintiff and defendant is in sharp conflict concerning the matter of the purchase of the real estate; however, there is no conflict about the fact, well established, that the proposed partnership, for which the real estate was to be used, fell through; that there was a disposition of the property by mutual agreement, and the accounts between the parties agreed

upon. Had plaintiff offered to pay, and defendant accepted, one-half of the purchase price of the real property involved prior to the mutual abandonment of any partnership operations and the settlement of their accounts, then this real property would have been taken into account and adjustment for the return of plaintiff's money be allowed, or a credit therefor. It is apparent, and the trial court undoubtedly so believed, that the real-estate transaction, consummated entirely by the defendant, and the reason why the record title stood in the names of both plaintiff and defendant, was for partnership purposes and the trial court was right in determining, that upon the mutual abandonment of the proposed partnership, under the circumstances disclosed, plaintiff had no real interest in the property. When the suggested partnership was mutually rescinded and abandoned, it was for both parties to return to status quo. The elements that entered into the intended partnership were inseverable, became an entirety, and as such, could not be rescinded in part or affirmed in part. *Laramie Poudre Irr. Co. v. Redfeather Lakes Resort, Inc.*, 94 Colo. 479, 31 P. (2d) 917.

If plaintiff's contention, that a tender of one-half of the purchase price was made to the defendant was sustained, it would not change the controversy here, because it would have been only a part of the inseverable transaction.

It is evident from its findings that the trial court vividly recalled all of the material evidence, and that a recess in the trial in no way was prejudicial to the plaintiff.

Judgment affirmed.